UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANETTE F. MELICHAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV244HEA/MLM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, Commissioner of Social Security, denying the request of Plaintiff Jeanette F. Melichar ("Plaintiff") for waiver of overpayment of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § § 401 et. seq. Plaintiff filed a Brief in Support of Complaint. Doc. 15. Defendant filed a Brief in Support of the Answer. Doc. 18. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 4.

## I.
## PROCEDURAL HISTORY

Plaintiff was awarded disability under Title II of the Act on March 9, 1992, based on finding that she was disabled due to a severe psychiatric impairment. Tr. 15. Plaintiff's trial work period ended in March 2001, and her extended period of eligibility ("EPE") ended in April 2004. Tr. 20. In 2004, Plaintiff underwent simultaneous continuing disability review ("CDR") and work review. Tr. 34-43, 79-86.

On February 21, 2006, the Commissioner informed Plaintiff of an overpayment in the amount of $35,861.90. Tr. 165-68. On June 22, 2006, Plaintiff filed a Request for Waiver. Tr. 191-98. The Commissioner denied Plaintiff's request. Tr. 15. Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on July 21, 2008. Tr. 282-325. By decision dated August 20, 2008, the ALJ denied Plaintiff's Request for Waiver. Tr. 15-21. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. The Appeals Council granted Plaintiff's request for review and, by notice dated December 12, 2008, issued a decision denying Plaintiff's Request for Waiver. Tr. 4-10. As such, the ALJ's decision regarding Plaintiff's Request for Waiver stands as the final decision of the Commissioner.

## II.
## RECORD BEFORE THE ALJ

The application for benefits signed by Plaintiff on October 31, 1991, states that Plaintiff agreed that she would notify the SSA if she returned to work or if her condition improved such that she could return to work. Tr. 230. Plaintiff was found disabled with an onset date of November 2, 1990. Tr. 15.

On June 7, 2004, the Commissioner requested that Plaintiff complete a Work Activity Report ("WAR"), telling the Commissioner about her work since January 1, 2000. On this date the SSA informed Plaintiff that the SSA's records showed that Plaintiff earned $12,662.89 for 2000, $8,291.33 for 2001, $9,417.25 for 2002, and $8,220.58 for 2003. Plaintiff completed the WAR on June 19, 2004. In the WAR Plaintiff stated that she had worked since January 2000; that she previously reported her work; that she worked part-time; and that she had been told by the SSA and her doctor that she could work part-time and still receive disability benefits because she was still disabled; that she had worked at Meadowbrook Country Club from May 2000 to December 2000 and from March 2001 to January 2002; that she worked at Red Lobster in March 2002 and that she was fired from that job; that she worked at Macaroni Grill in 2003 and was fired from that job; that Macaroni Grill made

2

her claim tips she did not receive; that in 2002 she worked at Malones Grill and was fired from that job; and that she worked at the St. Louis Club in 2003 and 2004 and that her co-workers at the St. Louis Club abused her; that in 2001, her average monthly income from part-time work was $678; that in 2002, her average monthly income from part-time work was $780; and that in 2003, her average monthly income from part-time work was $680. Tr. 80-85.

A Report of Continuing Disability Interview, dated September 28, 2004, completed by Enid Ervin, reflects that Plaintiff stated that she had "increased anxiety as time goes by" and that she "suffer[ed] from depression"; that she had a right shoulder injury and right CTS; that she felt she was not able to return to work; that her doctor had not told her that she could return to work; that she worked as a server at the St. Louis Club from May 2002 to June 2004; and that she worked as a server at Meadowbrook from April 2000 to January 2002. Ms. Ervin reported that, "as for comprehending, [Plaintiff] would wonder off at times and she would answer questions incorrectly." Ms. Ervin further *reported that Plaintiff had not been working*, "but she has worked since last CDR in 11/1997 and that work activity is in file (SSA-L725)." Tr. 42-43.

On October 15, 2004, the Commissioner notified Plaintiff that the Commissioner's decision of that date was "work issue cessation"; that, because substantial gainful work ("SGA") had stopped, Plaintiff's benefit checks could continue[1]; that a medical issue existed for Plaintiff's case; that Plaintiff had a trial work period, which was completed in March 2001; that an extended period of disability ("EPE") began in April 2001; and that the EPE would end if SGA was performed after March 2004. Tr. 47.

A Notice of Proposed Decision, dated October 15, 2004, from the SSA informed Plaintiff that:

---

[1] In the brief in support of the Answer, the Commissioner states that the SSA employee incorrectly stated that Plaintiff remained eligible for benefits.

> We have information about your work and earnings that could affect your Social Security disability payments. Based on this information, it appears we will decide that your disability ended because of substantial work and that you are not entitled to payments for:
>
> September 2001,
> November 2001 through January 2002.

Tr. 59.

The October 15, 2004 Notice of Proposed Decision further stated that the letter was sent to give Plaintiff a chance to "give us more information that you want us to consider"; that Plaintiff's work at Meadowbrook Country Club, Mallard Inc., Brinker International Payroll, and GMRI Inc. were considered in regard to the SSA's decision; that going to work does not affect a person's receiving benefits right away because a person is allowed a period of nine trial work months to test her ability to work in spite of her health problems; that Plaintiff's nine months were May through October 2000; that after the trial period ends, if a persons work activity shows the ability to do substantial work, the person will receive benefits for the month the disability ends and the following two months, no matter how much is earned; that in Plaintiff's case, the months of continued payment were April through June 2001; that right after a trial work period, there is a thirty-six month extended period of disability during which the SSA restarts payments for any months the work is not substantial if the claimant's health problems still meet SSA rules; and that Plaintiff's extended period of disability began April 2001 and would end if substantial work was performed after thirty six months following this date. The Notice of Proposed Decision also explained what substantial work is and the amount of earnings that qualified for substantial work through 2004. The Notice further stated that Plaintiff would be notified latter about overpayment due in her case. Tr. 60-62.

A letter from the SSA, dated December 10, 2004, states that, "[w]e recently reviewed the evidence in your Social Security disability claim and find that your disability is continuing. ... Your

4

claim will be reviewed from time to time to see if you are still eligible for benefits based on disability ... . When your claim is reviewed, you will be contacted if there is any question as to whether your eligibility continues." The December 10, 2004 notification also stated that "information about working" was included. In particular, this notification stated that if Plaintiff "went to work since [her] last report or [she] return[ed] to work in the future (no matter how little she earn[ed]," she must "tell [the Social Security Administration ("SSA")] right away." The December 10, 2004 notification further stated that if Plaintiff did not so inform the SSA, she "may have to repay any benefits [which were] not due." Tr. 22-24.

In a Statement of Claimant, dated January 18, 2006, Plaintiff reported that she received a letter "in about November or December of 2004" stating that she was being reevaluated and her disability was continuing; that she was told how much she was overpaid; that in December 2004 she began paying the Overpayment back at the rate of $122 a month; that the information the *SSA had about her working at the St. Louis Club was incorrect as she last worked there in June 2004*; that she worked at the *Daniele Hotel from July or August 2004 until January 2005*; that the amount that the Daniele Hotel reported she earned was incorrect as she had to give a portion of her earnings to the bartender, the busser, and the other server; that she returned to work for Hospitality Services in late March or early April 2005; and that at the time she completed the Statement she was working for Hospitality Services. Tr. 159.

A report from J. Kilian, of the St. Louis Social Security Office, dated January 18, 2006, states that Plaintiff came into the office on that date because of the Notice of Proposed Termination which she received; that Plaintiff was upset; that L. Kilian was not sure if Plaintiff "really understood what [she] was trying to tell her"; that Plaintiff did not know how much money she made in various jobs; that Plaintiff did not have pay stubs to prove that the amounts the SSA had were incorrect; that

5

Plaintiff said that in December 2004 she thought that "the whole work issue had been resolved"; that Plaintiff said she "went over her work with SSA and she received a notice in the mail that her disability was continuing; that she was told how much she was overpaid and had been repaying the Overpayment; that L. Kilian tried to explain to Plaintiff that the SSA could not continue to pay her because her EPE had expired; that Plaintiff was told that her EPE ended when she was working at the St. Louis Club; that even if the work there was "SGA, then the decision to stop her checks would not change, since the work at the Daniel Club was past the EPE"; that Plaintiff said she was still disabled; that Plaintiff was advised that she could file another application for benefits; and that Plaintiff said she was "working now but says she is well below the SGA limit of $860. Tr. 161.

On January 26, 2006, the SSA issued a Notice of Revised Decision concerning Plaintiff's "disability benefits" and stated that the SSA had decided that Plaintiff's disability had ended, and that she was not entitled to benefits for September 2001, November 2001 through December 2001, June 2002, August 2002 through December 2002, May 2003 through June 2003, December 2003, and April 2004 and continuing. The Notice of Revised Decision further stated that:

> After the trial work period, several things happen.
>
> Your disability ends if your work activity shows your ability to do substantial work. However, we pay benefits for the month disability ends and the following 2 months no matter how much is earned. Based on the information we have, in your case, this is April 2001 through June 2001.
>
> You get an extended period of eligibility that begins right after the trial work period. This is a 36 month period when we restart payments for any month(s) your work is not substantial if your health problems still meet our rules. Based on the information we have, your extended period of eligibility began April 2001 and has now ended.
>
> WHAT IS SUBSTANTIAL WORK
>
> Generally, substantial work is physical or mental work a person is paid to do. Work can be substantial even if it is part-time. To decide if a person's work is substantial, we consider the nature of the job duties, the skill and experience needed to do the job, and how much the person actually earns.

6

Tr. 155-56.

The Notice of Revised Decision further set forth the monthly amounts of earnings considered substantial. For 2006, this amount was $860; for 2005 it was $830; for 2004 it was $810; for 2003 it was $800; for 2002 it was $780; and for 2001 it was $740. The Notice of Revised Decision also stated that Plaintiff would be notified later about any overpayment due in her case. Tr. 156-57.

In Notice of Change of Benefits, dated February 21, 2006, the SSA informed Plaintiff that the SSA paid her "$35,861.90 too much in benefits," and that she "no longer qualified for benefits beginning April 2004." The Notice of Change of Benefits also stated that Plaintiff should not have received benefits in June 2002, August 2002 through December 2002, May 2003 through June 2003, December 2004, and April 2004 and continuing; that she was paid $35,861.90 "too much in benefits"; that Plaintiff was required to repay that amount within thirty days; that if she could not afford the full amount she should make a partial payment; and that Plaintiff could request a waiver if the Overpayment was not her fault in any way and if she cannot meet her necessary living expenses if the SSA recovered the Overpayment, or if recovery would be unfair for some other reason. Tr. 165-68.

In a Request for Waiver, dated June 22, 2006, Plaintiff stated that the Overpayment was not her fault and she cannot afford to pay the money back; that she did not earn more than the limit; that she made sure she did not exceed the monthly amount after her last review; that her bills exceed her income. that she has no assets; that her twenty-three year old son and three month old grandson depend on her for support; that at the time she completed the Request for Waiver she was employed by Hospitality Services; that her monthly gross pay at Hospitality Services was $2,000 and her net pay was $1,540, on the average; that she borrows her son's car and pays $250 a month insurance on the car; that her medicare premium is $265.50 a month; that her rent is $850 a month, that her electric bill is $500 a month; that she pays $344 a month for student loans; and that her monthly expenses total $2,809.50. Tr. 191-98.

Plaintiff's Request for Waiver was denied based on a finding that Plaintiff was not without fault. Plaintiff then requested review of this decision by an ALJ. Tr. 288, 201, 266. The ALJ confirmed the decision that Plaintiff should not be granted a waiver on the ground that Plaintiff was not without fault. Tr. 15-21. The Appeals Council affirmed the decision of the ALJ in regard to the ALJ's finding that Plaintiff was not without fault and vacated the ALJ's decision regarding the overpayment period. The Appeals Council found that the overpayment period included September 2001, November 2001 through January 2002, June 2002, August 2002 through December 2002, May 2003 through June 2003, December 2003, and April 2004 through February 2006. Tr. 7-10.

## III.
## STANDARD OF REVIEW and APPLICABLE LAW

The ALJ's decision is conclusive upon this court if it is supported by "substantial evidence." Onstead v. Sullivan, and subsequent cases. It is not the job of the court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the
> evidence and it allows for the possibility of drawing two inconsistent

> conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002) (internal citations omitted). See also Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 1991) (internal citations omitted).

This court also reviews decisions of the Commissioner to determine if there is an error of law. Newton v. Chatter, 92 F.3d 688, 692 (8th Cir. 1996). "To the extent decisions [of the Commissioner] do not comport with [the Eighth Circuit's] holdings, they are in error, and will be reversed." Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997).

Where an overpayment of benefits is made, 42 U.S.C. § 1383(b)(1)(A) provides that "proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual." However, the Commissioner is directed to:

> make such provision as the Commissioner finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual ... who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter ... .

42 U.S.C. § 1383(b)(1)(B).

20 C.F.R. § 416.537 defines overpayments as "payment of more than the amount due for any period." Additionally, 20 C.F.R. § 416.550 clarifies when it is appropriate to waive recovery of an overpayment. Section 416.550 states, in relevant part, that:

> Waiver of adjustment or recovery of an overpayment of SSI benefits may be granted when ... :
>
> (a) The overpaid individual was without fault in connection with an overpayment, and
>
> (b) Adjustment or recovery of such overpayment would either:
>
> (1) Defeat the purpose of title XVI, or
>
> (2) Be against equity and good conscience, or
>
> (3) Impede efficient or effective administration of title XVI due to the small amount involved.

In regard to the Commissioner's interpretation of the Social Security Act, the Eighth Circuit has held:

> We note at the outset that an agency's interpretation of the statute that it is charged with administering is entitled to considerable deference. Department of Social Services v. Bowen, 804 F.2d 1035, 1038 (8th Cir.1986) (citing Young v. Community Nutrition Institute, --- U.S. ----, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986)). In Young the Supreme Court stated: 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.... [A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.' Young, 106 S.Ct. at 2364 (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). The Supreme Court has also stated, however, that "'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" Southeastern Community College v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).

Groseclose v. Bowen, 809 F.2d 502, 505 (8th Cir.1987).

In Gladden v. Callahan, 139 F.3d 1219, 1222 (8th Cir. 1998), upon considering § 416.550, the

Eighth Circuit emphasized that the recovery of overpayment should be waived, according to the Regulations, where the Social Security recipient "is without fault, and recovery would be against equity and good conscience." The court further explained the circumstances under which a recipient might be found at fault and stated that the recipient:

> might be determined to be at fault for accepting overpayment ... if the evidence shows he should have recognized that his changed circumstances warranted notice to Social Security, or at least an inquiry about any effect of that change on his eligibility. 20 C.F.R. § 404.507(b) ("[F]ault on the part of the overpaid individual ... depends upon whether the facts show that the incorrect payment to the individual ... resulted from [f]ailure to furnish information which he knew or should have known to be material....").

Id. at 1223.

The Eighth Circuit explained, in Coulston v. Apfel, 224 F.3d 897, 900-901 (8th Cir. 2000), that a Social Security claimant's meeting her burden to establish she is without fault does not end the inquiry. It must also be determined that repayment would defeat the purpose of providing Social Security to the claimant or would be against equity and good conscience. Upon considering the meaning of "equity and good conscience," the court in Groseclose, 809 F.2d at 505-506, held that:

> The Social Security Act is silent as to the meaning of the phrase against equity and good conscience. Unless otherwise defined, statutory words "will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The term equity "denotes the spirit and habit of fairness and justness." Gilles v. Department of Human Resources Development, 11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110, 116 n. 10 (Cal.1974) (quoting Black's Law Dictionary). The term conscience means "the sense of right or wrong together with a feeling of obligation to do or be that which is recognized as good." Webster's Third New International Dictionary 482 (1981). The court in Gilles recognized that "against equity and good conscience" is "language of unusual generality." Gilles, 521 P.2d at 116, 113 Cal.Rptr. at 380. The court also recognized that such broad language "necessarily anticipate[s] that the trier of fact, instead of attempting to channelize his decision with rigid and specific rules, will draw upon precepts of justice and morality as the basis for his ruling." Id. ...
>
> Although the legislative history does not reveal the meaning of the phrase, it does indicate that Congress intended to make recovery more equitable by authorizing

11

the Secretary to waive recovery in certain circumstances. H.R.Rep. No. 728, 76th Cong., 1st Sess. 19 (1939) ("Provision is made for making more equitable the recovery by the Federal Government of incorrect payments to individuals."); Hearings on Social Security before the House Committee of Ways and Means, 76th Cong., 1st Sess. 2287-88 (1939) (expressing concern over allowing recovery from persons who are "perfectly innocent of any wrong doing"); S.Rep. No. 744, 90th Cong., 1st Sess. 257 (1967), U.S.Code Cong. & Admin.News 1967, pp. 2834, 3096 ("The new subsection (b) of section 204 of the act broadens the Secretary's authority to waive adjustment or recovery of overpayments.").

Notwithstanding the deference given to administrative interpretations, we believe that the Secretary's definition of "against equity and good conscience" is unreasonably narrow. It cannot be said that the relinquishment of a valuable right and the changing of one's position for the worse represent the only circumstances in which recoupment would be inequitable. We find it difficult to imagine a more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments. See United States v. Blackwell, 238 F.Supp. 342, 344-45 (D.S.C.1965) (although having found a change in position for the worse, the court emphasized the lack of knowledge in holding that recovery would be against equity and good conscience). Moreover, recoupment in this case would be inconsistent with the policy expressed in the legislative history--that recoupment should be equitable.

The court considered, in Groseclose, that the record demonstrated that: the claimant had no knowledge of overpayments; that he was not at fault; that the overpayments were not the result of an incorrect statement made by him, nor were they the result of a failure on his part to provide material information. The Eighth Circuit concluded, therefore, that recoupment from the claimant "in these circumstances would be against equity and good conscience as that phrase is commonly understood." Id. at 506.

In Coulton, 224 F.3d at 901, the court considered whether recoupment of overpayment from a Social Security recipient would "defeat the purpose of providing social security" to the recipient. Upon reaching the conclusion that taking a small amount of benefits away from him would do so, the Eighth Circuit considered that the recipient was "far from well-off"; that his annual income skirted the poverty line, the threshold of which was $8,667 in 1999; that he had no savings account; that he lived from check to check; and that he testified that he had a hard time making ends meet.

# IV.
# DISCUSSION

As stated above, the issue before the court is whether substantial evidence supports the Commissioner's final determination. Onstead, 962 F.2d at 804. Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusion. Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Thus, even if there is substantial evidence which would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Jones, 86 F.3d at 826.

Plaintiff does not take issue with the determination of the SSA that Overpayment was made nor does she contest the amount of Overpayment. Plaintiff argues, however, that repayment of the Overpayment should be waived. In support of this argument Plaintiff contends that the ALJ's decision is not supported by substantial evidence as she was without fault in regard to the overpayment and that recovery would defeat the purposes of the Act.[2]

**A.    Fault:**

Upon determining whether repayment should be waived, it must first be considered, pursuant to 42 U.S.C. § 416.537, whether Plaintiff was at fault. 20 C.F.R. § 404.507(a)-(c) is instructive of

---

[2] To the extent there may be a criminal investigation of Plaintiff's conduct, as acknowledged by Plaintiff's attorney at the hearing, the parties have not argued the relevance of such an investigation to this court's consideration of Plaintiff's Complaint. Tr. 300.

13

what is meant by fault. In particular, § 404.507(a)-(c) provides that a person is at fault if an incorrect payment resulted from an "incorrect statement" made by the Social Security recipient which she knew or should have known was incorrect; resulted from the recipient's failure to furnish information which she knew or should have known was material; or resulted from the recipient's acceptance of payment which he knew or should have known was incorrect. On the other hand, 20 C.F.R. § 510(b) provides that a person is considered without fault where she relies on "erroneous information from an official source within the [SSA]"; § 510(g) provides that a person is without fault where she relied on the "continued issuance of benefit checks" after she sent notice to the SSA of an event which "caused the deductions provided that such continued issuance of checks led [her] to believe in good faith that [she] was entitled to checks subsequently received"; and § 510(n) provides that a person is without fault where "failure to understand the deduction provisions of the Act ... the nature of which clearly shows that the individual was unaware of a violation of such deduction provisions." 42 U.S.C. § 404(b) provides that upon making a determination as to whether a person is without fault, the Commissioner should take into account, among other things, any mental limitations the individual might have.

For the following reasons the court finds that the ALJ's decision that Plaintiff is not without fault is not supported by substantial evidence. First, when asked about her earnings in early June 2004, Plaintiff promptly completed the Work Activity Report ("WAR") on June 19, 2004. While Plaintiff's application for benefits states that she was obligated to inform the SSA if she returned to work, Plaintiff signed this form in October 1991. She did not work until *eight years latter*, in 2000. The record does not reflect that during those eight years, or that anytime prior to June 2004, that the SSA reminded Plaintiff of the form which she signed in October 1991; that the SSA contacted Plaintiff in regard to whether she was working or had worked; or that Plaintiff failed to provide information regarding her work activity, when requested.

14

Second, Plaintiff was found disabled on the basis of a severe psychiatric impairment. The SSA never found that she was no longer disabled. In fact, in December 2004, Plaintiff received a communication from the SSA telling her that her disability was continuing. Thus, she continued to have a severe psychiatric impairment during the period she worked part-time, including the period from 2000 until June 2004 when she failed to report that she had worked. In September 2004, Ms. Erwin questioned Plaintiff's comprehension of questions posed to her. Further, J. Kilian reported in January 2006, that it was not clear if Plaintiff understood what she was being told about the termination of benefits. At the hearing Plaintiff testified that she was still receiving psychiatric treatment; that she could not think clearly; that she never understood the Guidelines regarding her various work periods while receiving benefits; and that she told Ms. Ervin of this. As such, in contravention of 42 U.S.C. § 404(b), the ALJ failed to give proper weight to Plaintiff's mental limitations upon finding her at fault.

Third, commencing June 2004, Plaintiff repeatedly complied with the SSA's requests that she report her earnings. Contrary to the ALJ's suggestion, the record does not even suggest that Plaintiff intentionally made incorrect statements about her work. As stated above, Ms. Erwin reported that Plaintiff's comprehension of questions posed was doubtful. Moreover, while Plaintiff's reports of her earnings and places of employment may not have been completely accurate, the record does not reflect that Plaintiff failed to furnish information to the best of her ability upon being requested to do so.

Fourth, the communications Plaintiff received from the SSA regarding her continuing to work are ambiguous and confusing. The SSA continued to issue Plaintiff disability checks through February 2006. Indeed, the ALJ's decision assumes that a lay person with a severe mental disability understands the difference between a work review and a continuing disability review. Under such circumstances, Plaintiff could reasonably believe that her receipt of benefits was not an error. See 20

15

C.F.R. § 510(b) and (g). Moreover, it cannot be said that Plaintiff should have understood, based on communications from the SSA and the statements of its employees, that she was not entitled to benefits or that her receiving benefits was an error. See 20 C.F.R. § 510(n). As such, the court finds that the ALJ's finding that Plaintiff was not at fault is not supported by substantial evidence; that substantial evidence establishes that Plaintiff is not at fault; and that, therefore, the ALJ's decision in this regard should be reversed. See 20 C.F.R.§ 404.510, § 510(b), (g), and (n); 42 U.S.C. § 1383(b)(1)(B).

B.  **The Failure to Waive Plaintiff's Repayment of Benefits Defeats the Purpose of the Act and is Against Equity and Good Conscience**:

If a person is not at fault, recoupment may be waived where repayment would defeat the purpose of the Social Security Act or repayment would be against equity and good conscience. See 20 C.F.R. § 416.550(b). Recoupment defeats the purpose of the Act if it deprives "a person of income required for ordinary and necessary living expenses." Groseclose, 809 F.3d at 504. As the court has found above that substantial evidence on the record establishes that Plaintiff is without fault and that the ALJ's finding to the contrary is not supported by substantial evidence, the court will consider whether recoupment will defeat the purpose of the Act.

First, upon computing Plaintiff's earnings, the SSA did not take into account Plaintiff's having to give the bartender and bus staff a portion of her tips while she worked as a server. Second, even assuming that Plaintiff's earnings were as represented by the SSA, Plaintiff was not earning, during the relevant periods, a substantial amount of money. Third, while Plaintiff was told in 2004 that she *might* have been overpaid, the SSA did not make it clear that she had been overpaid until February 2006. During that period the SSA continued to pay Plaintiff benefits and provided her with communications which a person with a severe psychiatric impairment can not necessarily be expected to understand. Fourth, Plaintiff testified that her income does not cover her expenses; that her son

pays about half of her expenses; that she has to get money from her son because otherwise she would not have enough money "to survive"; and that her expenses include medication and treatment by a psychiatrist. Tr. 312-13. Under no circumstances was Plaintiff "well-off" during the relevant period as her income "skirt[ed] the "poverty line."[3] See Coulton, 224 F.3d at 901 (considering that the poverty threshold in 1999 was $8,667) (citing www.census.gov/hhes/poverty/threshold/thresh99.html). Moreover, the record does not reflect that Plaintiff has assets as she does not own a home or a car, although she pays the insurance on her son's car. See id. (citing Banuelos v. Apfel, 165 F.3d 1166, 1170-71 (7th Cir. 1999) (considering claimant's assets in determining whether repayment defeats purpose of social security).

The court finds, therefore, that substantial evidence establishes that equity and good conscience preclude recoupment of overpayment by the SSA and that requiring Plaintiff to repay the SSA for benefits received would defeat the purpose of the Act. See Groseclose, 809 F.2d at 505-506; Coulston, 224 F.2d at 506.

**C.    Reversal and Waiver of Recoupment:**

The court has found above that the ALJ's decision that Plaintiff was at fault is not supported by substantial evidence and that substantial evidence establishes that Plaintiff is without fault. The court has further found that the evidence of record establishes that recoupment would defeat the purpose of the Act and would be inconsistent with the concepts of equity and good conscience.

The Eighth Circuit held in Andler v. Chater, 100 F.3d 1389, 1394 (8th Cir.1996), that where it is beyond dispute that a claimant would have been awarded benefits absent a conclusion of the ALJ

---

[3]     According to the Department of Health and Human Services Guidelines, the poverty level for a single person in 2006 was $9,800; in 2005 it was $9,570; in 2004 it was $9,310; in 2003 it was $8,980; in 2002 it was $8,860; in 2001 it was $8,860; and in 2000 it was $8,350. See HHS Poverty Guidelines, http://aspe.hhs.gov/poverty/figures-fed-reg.shtml.

17

which is not supported by substantial evidence and where the record presented to the ALJ contains substantial evidence supporting a finding that benefits should be awarded, a reviewing court may reverse the decision of the Commissioner and grant benefits to the claimant. Thus, this court has the authority to order the Commissioner to waive recoupment of the overpayment of SSI benefits to Plaintiff. See id. (citing Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir.1984)). The court finds that it is beyond dispute that Plaintiff is without fault; that requiring Plaintiff to repay benefits received would be contrary to the purpose of the Act; and that equity and good conscience require that recoupment be waived. The court finds, therefore, that the decision of the Commissioner should be reversed in regard to Plaintiff's being required to repay benefits received.

Sentence 4 of 42 U.S.C. § 405(g) states that a court has the power to reverse the decision of the Commissioner without remanding. See e.g., White v. Heckler, 774 F.2d 994, 996 (10th Cir. 1985). Given the court's decision there is not a need to remand this matter to the Commissioner. As such, the court will enter judgment in favor of Plaintiff and order that recoupment be waived.

## VI.
## CONCLUSION

The court finds that the decision of the ALJ is not supported by substantial evidence and is not consistent with the Regulations and applicable law. Additionally, the court finds that substantial evidence establishes that Plaintiff is without fault and that recoupment of overpayment of SSI benefits to Plaintiff should be waived. The court finds, therefore that, pursuant to 42 U.S.C. 405(g), sentence 4, this matter should be reversed and that remand to the Commissioner is not necessary.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief which Plaintiff seeks in her Brief in Support of Complaint should be **GRANTED**. Doc. 15.

**IT IS FURTHER RECOMMENDED** that a Judgment in favor of Plaintiff should issue;

**IT IS FURTHER RECOMMENDED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

The parties are advised that they have eleven (11) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of October, 2009.